598 F.2d 321
 79-1 USTC P 9347
 UNITED STATES of America, and William Sweerus, Special
Agent, Internal Revenue Service, Petitioners-Appellees,
v.
CHASE MANHATTAN BANK, Respondent,
and
Joel M. White, Intervenor-Appellant.
 No. 577, Docket 78-6175.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 26, 1979.
Decided April 20, 1979.
 
 John M. Bray, Washington, D. C. (Schwalb, Donnenfeld & Bray, Washington, D. C., Giora Ben-Horin, Brown & Bain, P. A., Phoenix, Ariz., Julian W. Friedman, Law Offices of Charles A. Stillman, New York City, of counsel), for intervenor-appellant.
 William J. Hibsher, Asst. U. S. Atty., S. D. N. Y., New York City (Robert B. Fiske, Jr., U. S. Atty., Peter C. Salerno, Frederick P. Schaffer, Asst. U. S. Attys., S. D. N. Y., New York City, of counsel), for petitioners-appellees.
 Before FEINBERG and MESKILL, Circuit Judges, and EDELSTEIN, District Judge.*
 MESKILL, Circuit Judge:
 
 
 1
 This is an appeal by Joel M. White ("taxpayer") from an order by Judge Constance Baker Motley of the United States District Court for the Southern District of New York granting an application by the Internal Revenue Service ("IRS") for enforcement of an administrative summons served on the Chase Manhattan Bank in connection with an IRS investigation of the taxpayer.[1] We find the order of the district court premature and remand for further proceedings.
 
 
 2
 On May 1, 1978, an administrative summons issued by the IRS pursuant to 26 U.S.C. §§ 7602 and 7609 was served on the Chase Manhattan Bank directing the production of certain records of the taxpayer's account. The summons was issued by IRS Special Agent William Sweerus, purportedly in conjunction with a joint criminal and civil investigation into the taxpayer's liabilities for the years 1972, 1973 and 1974. The IRS sent notice of the summons to the taxpayer the next day, 26 U.S.C. § 7609(a), and he promptly directed the bank not to comply with the summons, 26 U.S.C. § 7609(b)(2). On September 11, 1978, the IRS sought judicial enforcement of the summons in the Southern District, 26 U.S.C. §§ 7402, 7604. The taxpayer then intervened in opposition to the petition for enforcement, 26 U.S.C. § 7609(b)(1), by filing an answer, certain attorneys' affidavits, and a motion for an order directing discovery.
 
 
 3
 The taxpayer argued in his answer that enforcement of the summons should be denied because it (1) was not issued in good faith but solely in aid of a criminal investigation of the taxpayer, (2) was overly broad and sought information not relevant to a tax investigation, (3) was sought by the IRS as a substitute for grand jury subpoenas and search warrants in a criminal investigation, (4) was issued after an institutional decision by the Department of Justice to seek an indictment of the taxpayer, and (5) was issued in aid of an investigation initiated and requested by the FBI and Department of Justice and not in aid of a civil tax audit or investigation. In his request for discovery, taxpayer asked that depositions be taken from William Sweerus, Special Agent in the Criminal Investigation Division of the IRS (formerly the Intelligence Division); Shawn Harris, another IRS agent; and George Wilson, Assistant or former Assistant United States Attorney. He also sought an order requiring the government and the deponents to produce for inspection and copying all records of communications between the FBI or the Department of Justice, including the United States Attorney's Office, and the IRS relating to the taxpayer which took place prior to the issuance of the administrative summons here in question. He asked as well for all records reflecting institutional decisions concerning prosecution of the taxpayer by the Department of Justice, the United States Attorney's Office and the IRS prior to the issuance of the summons, and for "any requests, suggestions or directives by the F.B.I., Department of Justice, or any other department or agency to the Internal Revenue Service to conduct an investigation of Joel M. White." In the alternative, the taxpayer asked for an evidentiary hearing during which he would be permitted to question the two IRS agents and the Assistant United States Attorney. The government denied the taxpayer's allegations attacking the issuance of the summons, and opposed the motion for discovery or a hearing.
 
 
 4
 On November 6, 1978, Judge Motley heard oral argument by counsel for the government and the taxpayer, denied the motion to permit discovery or an evidentiary hearing, and entered an order enforcing the IRS summons with the notation: "The within petition to enforce IRS Summons is granted after hearing on 11/6/78, no facts from which bad faith can be concluded having been shown." The district judge also denied the motion for a stay pending appeal on the ground that taxpayer had "shown no likelihood of success on appeal."[2]
 
 
 5
 The IRS is authorized to summon any person having possession, custody or care of books, records, papers or other data as may be relevant or material to the purpose of "ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . or collecting any such liability," 26 U.S.C. § 7602, and the district courts have jurisdiction to enforce such summonses,26 U.S.C. §§ 7402, 7604. Here, it is our judgment that the records sought by Special Agent Sweerus by means of the summons served on the Chase Manhattan Bank are relevant and material to the investigation of the taxpayer's tax liabilities. The taxpayer does not seriously argue to the contrary. Thus, the government has satisfactorily met its initial burden of showing "that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed . . . ." United States v. Powell,379 U.S. 48, 57-58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). It follows that the burden is on the taxpayer here to show why the summons should not be enforced. United States v. Davey, 543 F.2d 996, 1000 (2d Cir. 1976) ("Once the IRS has made a minimal showing of relevancy . . . the burden shifts to the taxpayer to show why the summons might represent 'an abuse of the court's process' which should not be enforced."). The question on this appeal, then, is whether the taxpayer was afforded sufficient opportunity to make this showing. For the reasons that follow, we believe that he was not and that the order granting enforcement of the summons was premature. Accordingly, we vacate that order and remand to the district court for further proceedings.
 
 
 6
 In the district court the taxpayer maintained most strenuously that the IRS had issued the summons in question for a purpose not authorized by 26 U.S.C. § 7602, namely, in aid of a criminal investigation and prosecution by the Department of Justice. In support of that argument he filed with his answer affidavits by three attorneys who had personal knowledge of events bearing on the circumstances giving rise to this allegation. The affidavit of Attorney John M. Bray stated:(Taxpayer) was the subject of an F.B.I. and federal grand jury investigation which, in March 1976, resulted in his being subpoenaed before a federal grand jury in the Southern District of New York. The subpoena referred to investigation of violations of the Interstate Travel Act, 18 U.S.C. § 1952. (Taxpayer) was informed, through counsel, Robert I. Ansell . . . by Assistant United States Attorney George E. Wilson, Southern District of New York, that he was a target of the investigation and an indictment was anticipated against (him pertaining to allegations that he had received money and goods during his employment as insurance manager for W. T. Grant Co.).
 
 
 7
 On or about March 25, 1976, a federal search warrant was executed by F.B.I. agents on Mr. White's home . . ..
 
 
 8
 During the Spring of 1977, after (taxpayer) had moved to Arizona, an Internal Revenue Service income tax investigation of his federal joint income tax returns was commenced. The revenue agent conducting the investigation was Agent Shawn Harris. Mr. Harris has acknowledged, on information and belief, that his investigation was begun as a result of information provided by the F.B.I. in New Jersey to the Internal Revenue Service in New Jersey. Mr. Harris has . . . indicated to Arizona counsel representing (taxpayer), Giora Ben-Horin, . . . that the agent was attempting to work up a net worth statement and a statement of sources and application of funds with respect to (taxpayer) and to build a tax fraud case against (taxpayer) through third party contacts. Agent Harris also indicated . . . that many of the third parties were located in New York and New Jersey. Agent Harris said . . . that he had in mind documenting a criminal tax evasion case against (taxpayer).
 
 
 9
 The affidavit of Attorney Giora Ben-Horin of Phoenix, Arizona, stated:
 
 
 10
 On May 16, 1977, I met with Internal Revenue Service agent B. Shawn Harris at his request in connection with my representation of (the taxpayer). During my discussion with agent Harris on that date, he advised me that the Internal Revenue Service investigation of (taxpayer) had been commenced on the basis of information received by the Internal Revenue Service office in New Jersey from the Federal Bureau of Investigation. Agent Harris stated that (taxpayer) was under investigation by the FBI for possible involvement in commercial bribery, interstate transportation of stolen property and mail or wire fraud.
 
 
 11
 Agent Harris further advised me that he was attempting to "work up" a net worth statement and a statement of sources and application of funds in respect to (taxpayer) in an endeavor to build a tax fraud case against him. Agent Harris said that he intended to obtain necessary financial information from third party sources, many of which were located in New York and New Jersey, and stated that he had in mind documenting a criminal tax evasion case against (taxpayer).
 
 
 12
 And the affidavit of Attorney Robert I. Ansell stated:
 
 
 13
 On July 27, 1977, I received a telephone call from Joseph Stabile of the Federal Bureau of Investigation who advised me that he was working with the United States Attorney's Office in the Southern District of New York in connection with the criminal allegations against (taxpayer). At that time, arrangements were made for me to meet with Mr. Stabile and Ira Block, Esq., Assistant United States Attroney (sic) at the office of the latter in New York City.
 
 
 14
 That meeting took place on August 9, 1977 and concerned itself with the clear decision of Messrs. Block and Stabile to pursue the indictment of (taxpayer). The meeting was serious and urgent and Messrs. Block and Stabile went so far as to outline the Government's case against (taxpayer).
 
 
 15
 My last contact with the United States Attorney in this matter was a telephone conference of October 13, 1977. At that time, Mr. Block was so confident that an indictment would soon be returned that we discussed and agreed that I would be given the opportunity to surrender (taxpayer) to the authorities, rather than having him subjected to arrest.
 
 
 16
 I have not heard from Mr. Block since that time.
 
 
 17
 The government countered with affidavits of its own by Assistant United States Attorneys Wilson and Block and by Special Agent Sweerus and Agent Harris. Wilson's affidavit stated that during the time he was responsible for the criminal investigation of the taxpayer certain information concerning allegations of the taxpayer's improper conduct was made available to a special agent of the IRS, but that this agent was not furnished with any information developed through the grand jury process. He swore further that he had never been furnished with information regarding the taxpayer by the IRS other than the information that the taxpayer was the subject of an IRS criminal tax investigation. Block's affidavit was essentially the same as Wilson's, although Block stated that he had been advised by the IRS that the taxpayer had moved from New Jersey to Arizona.
 
 
 18
 Agent Harris denied that he had ever stated that he was building a criminal tax fraud case against the taxpayer and swore that he had never disclosed any information concerning his investigation of the taxpayer to the Department of Justice. Special Agent Sweerus' affidavit stated:
 
 
 19
 Though I have received information from the Department of Justice ("the Department") both the United States Attorney's Office and the Federal Bureau of Investigation concerning (taxpayer) I have never had access to grand jury information.
 
 
 20
 Furthermore, at no time have I, or to my knowledge, any other IRS agent, supplied any information concerning (taxpayer) to the Department.
 
 
 21
 I have never stated to (taxpayer's) attorneys nor anyone else that I am building a tax case against (taxpayer); indeed, until I have obtained the documents sought by the summons I will be unable to properly assess the case for purposes of making a recommendation for criminal prosecution to my superiors in the IRS.
 
 
 22
 Finally, in addition to examining the possible criminal aspects of the case, my investigation also concerns whether a 50 percent civil penalty should be recommended.
 
 
 23
 The district court made no finding of facts but concluded that the facts either shown or alleged were insufficient to support a claim of IRS bad faith. It is on the basis of the various papers submitted by the parties that we decide this appeal.
 
 
 24
 The Supreme Court held in Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964), that a taxpayer "may challenge (an IRS) summons on any appropriate ground. This would include . . . the (defense) that the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution . . . ." Subsequently, in Donaldson v. United States, 400 U.S. 517, 533, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), the Court interpreted this rule as "applicable to the situation of a Pending criminal charge or, at most, of an investigation Solely for criminal purposes." (emphasis added). The Donaldson Court decided that Congress intended to allow the use of administrative summonses in investigating Potentially criminal conduct. The Court declined to force the IRS to choose either (1) to forego the use of the summonses or (2) to abandon the option of recommending criminal prosecution to the Department of Justice. It held that as long as the summonses were issued in the good faith pursuit of congressionally authorized purposes And prior to any recommendation to the Department of Justice for prosecution, they were enforceable.
 
 
 25
 In United States v. LaSalle National Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), a case involving an IRS summons issued Solely for the purpose of unearthing evidence of criminal conduct, the Court had occasion to examine the limits of the good faith use of IRS summonses. The Court explained that the IRS had combined responsibilities civil and criminal investigations and that these combined responsibilities required that the IRS be allowed to use summonses to investigate not only civil but potentially criminal violations. Given this dual function, the "primary limitation" on the use of summonses in potentially criminal matters "occurs upon the recommendation of criminal prosecution to the Department of Justice. Only at that point do the criminal and civil aspects of a tax fraud case begin to diverge." 437 U.S. at 311, 98 S.Ct. at 2365. "Nothing in § 7602 or its legislative history suggests that Congress intended the summons authority to broaden the Justice Department's right of criminal litigation discovery or to infringe on the role of the grand jury as a principal tool of criminal accusation." 437 U.S. at 312, 98 S.Ct. at 2365. See United States v. Morgan Guaranty Trust Co., 572 F.2d 36 (2d Cir.), cert. denied, 439 U.S. 822, 99 S.Ct. 89, 58 L.Ed.2d 114 (1978). Thus, post-referral use of the summons is prohibited.
 
 
 26
 On the other hand, "(P )Rior to a recommendation for prosecution to the Department of Justice, the IRS must use its summons authority in good faith." 437 U.S. at 313, 98 S.Ct. at 2366 (emphasis added). Lack of good faith is difficult to demonstrate, however, because it depends upon a showing that the summons was issued for an "improper purpose" including " 'any . . . purpose reflecting on the good faith of the particular investigation.' " 437 U.S. at 314, 98 S.Ct. at 2366, Quoting United States v. Powell, supra, 379 U.S. at 58, 85 S.Ct. 48 at 255. One instance of an improper purpose is when the summons is issued to aid an investigation that is Solely criminal in nature. "For a fraud investigation to be solely criminal in nature," however, "would require an extraordinary departure from the normally inseparable goals of examining whether the basis exists for criminal charges and for the assessment of civil penalties." 437 U.S. at 314, 98 S.Ct. at 2366. Further increasing the challenger's burden is the obligation to show Institutional bad faith. The fact that one agent has an improper motive for the issuance of the summons does not mean that the purpose of the IRS investigation is similarly improper. An agent's personal intent is not dispositive; it is the "institutional posture" that matters:
 
 
 27
 (T)his means that those opposing enforcement of a summons do bear the burden to disprove the actual existence of a valid civil tax determination or collection purpose by the Service. . . .
 
 
 28
 Without doubt, this burden is a heavy one.
 
 
 29
 437 U.S. at 316, 98 S.Ct. 2357.
 
 
 30
 The LaSalle Court explicitly recognized, however, that the requisite showing of bad faith could be made in certain rare circumstances:
 
 
 31
 Because criminal and civil fraud liabilities are coterminous, the Service rarely will be found to have acted in bad faith by pursuing the former. On the other hand, we cannot abandon this aspect of the good-faith inquiry altogether. We shall not countenance delay in submitting a recommendation to the Justice Department when there is an institutional commitment to make the referral and the Service merely would like to gather additional evidence for the prosecution. Such a delay would be tantamount to the use of the summons authority after the recommendation and would permit the Government to expand its criminal discovery rights. Similarly, the good-faith standard will not permit the IRS to become an information gathering agency for other departments, including the Department of Justice, regardless of the status of criminal cases.
 
 
 32
 437 U.S. at 316-17, 98 S.Ct. at 2367-2368 (footnotes omitted).
 
 
 33
 The record in the instant case discloses one of those unusual fact situations which call into serious question the good faith of the IRS in issuing an administrative summons. In May of 1977, Agent Harris, apparently of the IRS audit division, contacted the taxpayer in Phoenix with the intention to make a net worth income reconstruction. Harris acknowledged that the IRS investigation was commenced on the basis of information provided by the FBI to the IRS relating to the FBI's investigation of the taxpayer for alleged commercial bribery, interstate transportation of stolen property and mail and wire fraud. One of the taxpayer's lawyers swears that Harris said that he was endeavoring to build a criminal tax evasion case against the taxpayer; Harris denies making the statement. It appears that the civil audit by Harris was ordered at about the same time as the criminal investigation was begun by Agent Sweerus. Harris is no longer involved in the investigation of the taxpayer's records or possible liabilities; it was Agent Sweerus who served the summons on May 1, 1978. It is undisputed that a criminal indictment alleging bribes and kickbacks against the taxpayer was "imminent" in October of 1977; to date, the taxpayer has not been indicted.
 
 
 34
 It is undisputed that the IRS has not furnished any information to the FBI other than the fact that it is pursuing its own investigation of the taxpayer. However, on this record, and without some form of discovery or evidentiary hearing, we do not believe that the district judge could determine whether there is a connection between the holding up of the "imminent" criminal indictment against the taxpayer and the evidence sought by the summons. Put another way, was the referral by the FBI to the IRS made for the purpose of having the IRS secure information that could then be used by the FBI in its own prosecution? Or was the FBI reference to the IRS simply a matter of "routine"? As explained in LaSalle, "(t)he good-faith standard will not permit the IRS to become an information gathering agency for other departments, including the Department of Justice, regardless of the status of criminal cases." 437 U.S. at 317, 98 S.Ct. at 2368. The government would allay our fears with its representation that the IRS has not turned over any information to the FBI. But this in turn may be due to the taxpayer's efforts to date to keep from the IRS the materials sought by the summons. We do not suggest that the IRS would act unlawfully if given the opportunity, but at the same time we intend to give the government's assurances in this regard no more than their proper weight. So that the record may be more complete, the taxpayer should be allowed to probe, in a limited and reasonable fashion, for an answer to these questions.
 
 
 35
 The government's position is not helped by our recent decision in United States v. Chemical Bank, 593 F.2d 451 (2d Cir. 1979). There was no suggestion in Chemical Bank that a recommendation for prosecution had been delayed by the IRS so that the summons could provide evidence. Id. at 455.[3] Here, an "imminent" non-tax-related criminal indictment has been delayed without explanation. And, at least arguably as a result of a Department of Justice reference to the IRS, an administrative summons has been issued seeking information regarding a taxpayer's financial records. On the present record, it cannot be determined whether the delay is related to the summons.
 
 
 36
 Thus, we find insufficient evidence in this record to decide that the IRS is proceeding in "good faith." And the evidence that has been offered sufficiently raises the possibility of "bad faith" that more information is required before enforcement of the summons is ordered. See United States v. Marine Midland Bank of New York, 585 F.2d 36, 38 (2d Cir. 1978); Cf. United States v. O'Henry's Film Works, Inc., 598 F.2d 313, 320, (2d Cir. 1979). We believe here, as we did in Marine Midland, that no "full-dress discovery and trial" are necessary to resolve the issues raised in this case. Limited discovery will suffice. But there is required more of a "good faith Inquiry " than was held below.
 
 
 37
 We vacate the order and remand to the district court for further proceedings, including the allowance of limited discovery, either in the form of affidavits from other government officials or in the form of limited interrogatories to those who have already offered affidavits, the answers to which may be sealed if necessary to preserve the secrecy of the grand jury proceedings, to determine if the non-tax criminal indictment of the taxpayer is being held up pending, or is in any improper way connected to, compliance with the summons sought to be enforced.
 
 
 
 *
 Hon. David N. Edelstein, Chief Judge, United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 The bank did not appear before the district court. By stipulation before this Court, the bank has withdrawn from this appeal, expressing its intention to comply with our decision
 
 
 [2]
 Summonses have been served by the IRS on other banks for records of taxpayer and petitions have been filed to enforce those summonses. By stipulation, those proceedings are to be controlled by the final disposition of this action. Appellant's Brief at 3. There is no indication in the record that this enforcement order has been implemented
 
 
 [3]
 We do not read the dictum in United States v. Chemical Bank, 593 F.2d 451 (2d Cir. 1979), concerning the availability of a future suppression motion to cure a present breach of faith, as eliminating the need for a "good faith inquiry" under LaSalle