ADJUDICATION
 

 DITTER, District Judge.
 

 In these consolidated proceedings brought pursuant to 26 U.S.C. §§ 7402(b) and 7604(a), the Internal Revenue- Service (IRS) seeks enforcement of six summonses to produce certain records which are currently in the possession of the defendants. The records are sought pursuant to an ongoing civil and criminal investigation of the tax liability of the intervenor, Thomas McNulty. After careful consideration of the pleadings, the evidentiary record, and the submissions of the parties, I conclude that the defendants must be ordered to comply with the summonses. This conclusion is based upon the following
 

 FINDINGS OF FACT
 

 1. The plaintiff, Margaret M. Box, is a special agent with the Criminal Investigation Division of the IRS and is authorized to issue Internal Revenue summonses under the authority of 26 U.S.C. § 7602. (Complaints ¶¶ II; Tr. 11).
 

 2. Pursuant to this authority, she issued six summonses which these proceedings and upon the defendants as form the basis of which were served follows:
 

 a. Commonwealth Federal Savings and Loan (“Commonwealth”) June 22,1978
 

 b. Frankford Trust (“Frankford”) June 23,1978
 

 c. Girard Bank (“Girard”) June 27,1978
 

 d. Fidelity Bank (“Fidelity”) July 13,1978
 

 e. Administrator, Plumbers Union, Local 690, Apprenticeship Training Fund (“Apprenticeship Fund”) August 22,1978
 

 f. Plumbers Union, Local 690 (“Local 690”) August 22,1978
 

 3. At the time each summons was issued, Special Agent Box and Revenue Agent Thomas Hunsberger were conducting a joint criminal and civil investigation of the federal income tax liabilities, if any, of Thomas McNulty for the years 1974
 
 *1243
 
 through 1977. (Tr. 11-12). Special Agent Box was in charge of the investigation and Revenue Agent Hunsberger was the cooperating agent whose duties included assisting the special agent as required. (Tr. 12, 15— 16).
 

 4. Pursuant to 26 U.S.C. § 7609(b)(2), McNulty notified each of the banks not to comply thus staying enforcement of the summonses issued to Commonwealth, Frankford, Girard, and Fidelity.
 

 5. By order dated September 22, 1978, the Honorable Charles R. Weiner, of this Court, granted McNulty’s motion for a temporary restraining order and, later, preliminarily enjoined compliance with the union summonses until an order of compliance in enforcement proceedings was entered by a court of competent jurisdiction.
 

 6. In 1976, a grand jury investigation began in the Eastern District of Pennsylvania. The targets of the grand jury investigation were James O’Neill, Thomas McNulty, and the Apprenticeship Fund. (Tr. 31).
 

 7. The Department of Justice requested the assistance of IRS personnel in conducting the grand jury investigation. (Sweeney Dep. 4). Pursuant to this request, in late 1976, Revenue Agent Hunsberger and Special Agent James Kamienicki were assigned to assist in the grand jury investigation. (Hunsberger Dep. 5-6; Kamienicki Dep. 6). In 1977, Special Agent Augustine Matson was also assigned. (Matson Dep. 4).
 

 8. Only O’Neill was the subject of a tax investigation by the IRS in 1976 and 1977 and an open file was maintained as to only his tax liabilities. (Hunsberger Dep. 6-7; Sweeney Dep. 7-8; Kamienicki Dep. 7).
 

 9. On May 11, 1977, pursuant to the government’s motion, the Honorable John P. Fullam entered the following order under Rule 6(e) of the Federal Rules of Criminal Procedure:
 

 Now, this 11th day of May, 1977, upon consideration of the government’s
 
 ex parte
 
 motion pursuant to Rule 6(e) for authorization to disclose matters appearing before the grand jury, it is hereby ordered that the United States Attorney and Special Attorneys of the United States Department of Justice are authorized to utilize the assistance of special agents and employees of the Internal Revenue Service in this Grand Jury investigation, and may give access to books, records, documents and transcripts of testimony of witnesses subpoenaed before the Grand Jury in this investigation to the said employees of the Internal Revenue Service; the said employees of the Internal Revenue Service shall not be prohibited from utilizing such material in the course of their official duties for criminal and/or civil purposes, provided that the subpoenaed material shall remain at all times under the aegis of the attorneys for the Government.
 

 (Tr. 32-33). In addition, in July of 1977, the Justice Department obtained a disclosure order under 26 U.S.C. § 6103 authorizing the IRS to turn over McNulty’s tax returns to the grand jury. (Matson. Dep. 13-15; Hunsberger Dep. 11-12). Pursuant to this order, McNulty’s tax returns were turned over to the grand jury. (Kamienicki Dep. 12-14).
 

 10. O’Neill was indicted at the end of August, 1977. No indictment was sought or returned against McNulty and the IRS made no recommendation that he be indicted. (Tr. 31-32; Matson Dep. 17 — 18).
 

 11. However, after correlating the grand jury materials made available pursuant to Judge Fullam’s Rule 6(e) order with McNulty’s tax returns, Revenue Agent Hunsberger began to suspect that McNulty may have failed to report certain items of income in violation of the Internal Revenue Code. (Hunsberger Dep. 24). Accordingly, at the end of August, 1977, he referred the matter of McNulty’s tax returns to the criminal investigation division of IRS. (Tr. 33; Hunsberger Dep. 22).
 

 12. In December, 1977, the Criminal Investigation Division accepted the referral from Revenue Agent Hunsberger to investigate possible tax fraud by McNulty (Tr. 23) and the case against McNulty was “numbered”, which means the IRS formally began its investigation. (Tr. 27).
 

 
 *1244
 
 13. The investigation was commenced as a joint investigation, that is an investigation pursued jointly by the criminal investigation division and the civil examination division. (Tr. 12).
 

 14. On December 14, 1977, the matter was assigned to the plaintiff, Special Agent Box, and to Revenue Agent Hunsberger. (Tr. 11, 23, 27; Sweeney Dep. 9). The purposes of the investigation are to determine if McNulty has violated the Internal Revenue Code and to ascertain his correct tax liability for the years under investigation. (Tr. 12).
 

 15. Special Agent Box did not know of the prior grand jury investigation of McNulty until she began this investigation in December, 1977. (Tr. 28).
 

 16. During January and February, 1978, Special Agent Box and Revenue Agent Hunsberger had several conversations with Assistant United States Attorney Greg Magarity and FBI Agent John Tamm, the principals involved in the prior grand jury investigation, and inquired whether McNulty was still the subject of a grand jury inquiry. (Tr. 40-43; Hunsberger Dep. 28-29). On February 13, 1978, Agent Tamm advised that the F.B.I. was not investigating McNulty. (Box Dep. II, 5; Tr. 42-43).
 

 17. During the course of these conversations, Magarity suggested that Box research the correct procedure whereby the IRS could request the Department of Justice to commence a grand jury investigation of possible title 26 violations. (Tr.
 
 42-45;
 
 Box Dep. I 9). At this point, neither Box nor Magarity had made a decision on whether a grand jury would be utilized. (Box Dep. I 9).
 

 18. On March 1, 1978, Special Agent Box contacted the Office of District Counsel and made a pre-referral request for legal advice as to how to proceed in the McNulty investigation. (Tr. 43; Box Dep. II 3, 4; Foster Dep. I 22; Foster Dep. II 3). The matter was assigned to a staff attorney, Edward Foster.
 

 19. Generally, the purpose of such a prereferral conference is not to decide whether to refer a matter for criminal prosecution but, rather, to address any unusual legal problems which have arisen during the investigation and to evaluate whether the evidence which is being developed fits within the required elements of proof for a criminal offense. (Foster Affidavit ¶ A2; Foster Dep. I 5-6, 8 — 10; Box Dep. II 24).
 

 20. In this case, Box’s primary concern was whether or not information obtained by the grand jury and made available to the Internal Revenue Service by the Rule 6(e) order could be used in the investigation of McNulty. A secondary question was raised concerning whether or not an IRS summons could be used as an investigative tool in light of the preceding grand jury investigation. (Foster Affidavit ¶ A4; Foster Dep. II 6; Box Affidavit ¶ 2A).
 

 21. Foster gave Special Agent Box legal advice which was later incorporated into a written pre-referral report dated April 8, 1978. (Box Dep. II 23; Foster Dep. II 7). foster advised Box that the information previously made available to the IRS pursuant to the Rule 6(e) order could probably be used in the investigation. (Foster Dep. II 7, 10-11). He did, however, caution that the prior grand jury investigation might taint an administrative summons by suggesting to a finder of fact that it had been issued for an exclusively criminal purpose. (Foster Dep. II 7, 11, 14). Accordingly, he recommended that, although the investigation could proceed by way of summons, if necessary, the surest way to investigate McNulty would be to utilize another grand jury. (Foster Dep. II 11; Box Dep. II 28, 32, 37).
 

 22. At the time Box consulted with Foster, she had made no decision as to whether the investigation should be referred to the Justice Department for criminal prosecution. (Box Dep. II 24, 31-32; Foster Dep. II 13-14). She sought the pre-referral session solely to ascertain the legally proper and most expeditious manner in which to conduct her investigation. (Box Dep. II 7-8, 28).
 

 23. In recommending the investigation be pursued by means of a grand jury inquiry, Foster was not advising criminal
 
 *1245
 
 prosecution on the basis of the evidence presented. (Foster Dep. II 5, 13). Rather, he was offering what he perceived to be the most expeditious and legally unobjectionable way to proceed in view of potential problems presented by the earlier grand jury investigation., (Foster Dep. II 14).
 

 24. After receiving this legal advice from Foster, Special Agent Box contacted Assistant United States Attorney Magarity and asked whether he had any interest in pursuing a grand jury investigation of McNulty’s tax liabilities. (Tr. 44; Box Dep. I 8; Box Dep. II 33-34). On June 5, 1978, Magarity advised Box that there was no interest in pursuing such a grand jury investigation and that a grand jury investigation of McNulty’s correct tax liabilities would not be approved by the Department of Justice because there was not enough information to indicate McNulty had committed a tax crime. (Tr. 44 — 45).
 

 25. After receiving this information,' Box and Hunsberger decided to pursue the investigation by means of administrative summonses. (Tr. 44-45, 50; Box Dep. I 6-8; Box Dep. II 12, 16).
 

 26. It was not until after this decision was made that Box obtained the grand jury materials covered by the Rule 6(e) order. (Box Dep. I 14-15, 20; Box Dep. II 16-18).
 

 27. At no time during any of her discussions with Magarity did Box make available to the U.S. Attorney or to any other government agency, information obtained by the IRS in the McNulty investigation. (Box Dep. I 13).
 

 28. Each summons was issued pursuant to the IRS joint civil and criminal investigation of McNulty’s tax liability for the years in question.
 

 29. The records which are sought by each of the summonses may be relevant to a determination of McNulty’s correct tax liability for the years in question and to whether he has violated the provisions of the Internal Revenue Code. (Tr. 13).
 

 30. The information which is sought is not already in the possession of the IRS.
 

 31. At the time the summonses were issued, the IRS had not referred the McNulty investigation to the Justice Department for criminal prosecution.
 

 32. At the time the summonses were issued, the IRS had made no institutional decision to refer this investigation to the Justice Department for criminal prosecution. (Tr. 14).
 

 33. At the time the summonses were issued, Special Agent Box had made no decision to recommend that the investigation be referred for criminal prosecution. (Tr. 15; Box Dep. II 32).
 

 34. The summonses were not issued by the IRS solely to obtain information for criminal prosecution.
 

 DISCUSSION
 
 [1]
 

 Section 7602 of the Internal Revenue Code, 26 U.S.C. § 7602, empowers the
 
 *1246
 
 IRS to issue summonses to obtain testimony and documents for the purpose of “ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax ... or collecting any such liability . . . . ” Although the statute contains no such limitation, it has long been settled that in exercising its summons power, the IRS may not obtain information for the sole purpose of pursuing a criminal investigation.
 
 Donaldson v. United States,
 
 400 U.S. 517, 533, 91 S.Ct. 534, 543, 27 L.Ed.2d 580 (1971). In resisting enforcement of the summonses in question here, McNulty contends that they were issued for the sole purpose of uncovering information which will eventually be used in a criminal prosecution. The disposition of this contention requires a brief discussion of the standards governing the enforceability of an IRS summons.
 

 The crucial inquiry in a case of this nature is to determine the institutional posture of the IRS at the time the summons is issued. In
 
 United States v. LaSalle National Bank,
 
 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), the Supreme Court determined that the primary limitation upon the use of the summons power occurs when the IRS refers an investigation to the Justice Department for criminal prosecution. Once such a referral has been made, the IRS is conclusively precluded from issuing summonses for taxpayer-related records pertaining to the matter under investigation.
 
 Id.
 
 at 311, 98 S.Ct. at 2365.
 
 See also United States v. Garden State National Bank,
 
 607 F.2d 61, 67 (3d Cir. 1979). Where an investigation has not yet been referred to the Justice Department, a summons is presumptively valid and subject to challenge by the taxpayer only if it has not been issued in good faith.
 
 United States v. LaSalle National Bank, supra,
 
 437 U.S. at 313, 98 S.Ct. at 2366. At the threshold, it is the government’s burden to prove a
 
 prima facie
 
 case of good faith as defined in
 
 United States v. Powell,
 
 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). The elements of such a showing are that:
 

 1. the investigation is being conducted for a legitimate purpose;
 

 2. the material sought is relevant to that purpose;
 

 3. the information sought is not yet in the possession of the IRS; and
 

 4. the proper administrative steps have been followed.
 

 Id.
 
 at 57-58; 85 S.Ct. at 255. Once this burden has been met, the taxpayer must establish that, although no formal referral has occurred, the IRS has made an institutional commitment to refer the case for criminal prosecution and that the summonses issued after that commitment has been made serve no civil purpose.
 
 United States v. Genser,
 
 602 F.2d 69, 71 (3d Cir.) (per curiam),
 
 cert. denied,
 
 444 U.S. 928,100 S.Ct. 269, 62 L.Ed.2d 185 (1979)
 
 (Genser III).
 
 In short, there must be an institutional abandonment of the pursuit of civil tax determination or collection.
 
 United States v. Serubo,
 
 604 F.2d 807, 811 (3d Cir. 1979).
 

 The
 
 LaSalle
 
 standards have been further refined by the Third Circuit. The period before the IRS refers an investigation to the Justice Department for criminal prosecution is divided into two parts.
 
 See United States v. Genser,
 
 595 F.2d 146 (3d Cir.)
 
 (Genser II), cert. denied,
 
 444 U.S. 928, 100 S.Ct. 269, 62 L.Ed.2d 185 (1979). A summons issued prior to the time that the investigating agent has recommended prosecution to his superiors, is “virtually unassailable.”
 
 Id.
 
 at 151. After the agent makes such a recommendation, but before
 
 *1247
 
 the IRS formally refers the matter to the Justice Department for criminal prosecution, the taxpayer bears the “heavy” burden of proving a pre-existing institutional commitment to refer for prosecution as well as the absence of any civil purpose underlying the summons.
 
 Id; United States v. Garden State National Bank, supra,
 
 607 F.2d at 70. However, a summons issued before the investigating agent has made a recommendation to his superiors to prosecute criminally may be subject to challenge if, for example, it was issued at the request of a United States Attorney or if the agent was instructed by his superiors to delay recommendation for the sole purpose of allowing information to be gathered by way of summons.
 
 Genser II, supra,
 
 595 F.2d at 151.
 

 It remains to apply these general principles to the facts of this case. It is undisputed on this record that the IRS had not formally referred this matter to the Justice Department for criminal prosecution at the time the summonses were issued. Moreover, I have determined that the IRS has made no institutional commitment to refer the matter for prosecution and that Special Agent Box has not recommended to her superiors that McNulty be criminally prosecuted.
 
 Findings of Fact
 
 Nos. 32, 33. Finally, it is clear that the IRS has sustained its burden of satisfying the
 
 Powell
 
 standards for good faith by virtue of the sworn affidavits of Special Agent Box which were filed with the complaints.
 
 See United States v. McCarthy,
 
 514 F.2d 368, 372-373 (3d Cir. 1975). The only question remaining for my determination is whether McNulty has sustained his burden of demonstrating that the U.S. Attorney’s tangential involvement in this investigation establishes that the summonses were issued by the IRS solely for the purpose of obtaining information for criminal prosecution. I conclude that he has not.
 

 At the outset, I reject McNulty’s contention that because the IRS investigation had its genesis in an exclusively criminal inquiry, specifically the grand jury materials obtained pursuant to Judge Fullam’s Rule 6(e) order, it must be inferred that the IRS is likewise pursuing a purely criminal investigation. In
 
 United States v. Cleveland Trust Co.,
 
 474 F.2d 1234 (6th Cir.),
 
 cert. denied,
 
 414 U.S. 866, 94 S.Ct. 48, 38 L.Ed.2d 118 (1973), the court determined that an in-depth audit did not lose its character as a civil tax examination merely because it was commenced by the IRS at the suggestion of the Justice Department’s Organized Crime Strike Force.
 
 Accord United States v. Chemical Bank,
 
 593 F.2d 451, 455-56 (2d Cir. 1979);
 
 United States v. Chase Manhattan Bank,
 
 486 F.Supp. 317, 319 (S.D.N.Y.1979),
 
 aff’d mem.,
 
 620 F.2d 286 (2d Cir. 1980). These decisions are premised upon a recognition that in the exercise of its broad investigatory powers, the IRS obtains information about possible tax violations from a wide variety of sources. This information, regardless of its source, may generate an interest in civil tax recovery as well as in potential criminal prosecution and will necessarily spawn an investigation in which the civil and criminal elements are coterminous. Thus, the good faith of a summons is not contingent upon the source or nature of the information prompting the investigation but upon the IRS’ motivation in conducting the inquiry.
 
 [2]
 

 McNulty’s more troublesome contention is that the IRS involvement with the grand jury investigation and, subsequently Special
 

 
 *1248
 
 Agent Box’s contacts with the U. S. Attorney raise the inference that the IRS is merely acting as “an information-gathering agency” for the Department of Justice.
 
 See United States v. LaSalle National Bank, supra,
 
 437 U.S. at 317, 98 S.Ct. at 2368;
 
 United States v. Serubo, supra,
 
 604 F.2d at 813. Clearly, when an IRS agent works hand in hand with the U. S. Attorney in pursuing an investigation, the bona fides of utilizing the summons procedure may be seriously compromised.
 
 See United States v. Serubo, supra; United States v. Chase Manhattan Bank,
 
 598 F.2d 321 (2d Cir. 1979).
 
 [3]
 
 Indeed, one of the principal exceptions to the “virtually unassailable” presumption in favor of a summons issued pri- or to an agent’s recommendation to prosecute is a situation where the agent acts as a “conduit” to channel information to the U. S. Attorney.
 
 See United States v. First National State Bank of New Jersey,
 
 616 F.2d 668, 671 (3d Cir.),
 
 cert. denied,
 
 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980);
 
 United States v. Garden State National Bank, supra,
 
 607 F.2d at 70. I have carefully examined the record in this matter and conclude that nothing transpired during Special Agent Box’s contacts with Assistant U. S. Attorney Magarity which would undermine the validity of these summonses.
 

 The record clearly reveals that the grand jury investigation concluded with O’Neill’s indictment in August of 1977, approximately four months before the IRS investigation was opened and assigned to Box. After hearing that McNulty had been the target of a grand jury, Ms. Box initiated contact with the U.S. Attorney because of her concern that the prior grand jury inquiry might have adverse implications for her ability to conduct the IRS investigation by means of summonses. She communicated with Agent Tamm and with Assistant U.S. Attorney Magarity in order to ascertain if they were still pursuing or intended to pursue an investigation of McNulty via the grand jury. In addition, she consulted with attorney Foster to solicit his advice as to the best way to proceed. There is no evidence that Box sought to encourage or induce Magarity to initiate another grand jury investigation nor is there anything to indicate that she turned over materials gathered by the IRS to Magarity.
 
 [4]
 
 Moreover, Box testified unequivocally that she had made no determination as to the likeli
 
 *1249
 
 hood of either a civil penalty assessment or criminal prosecution because the investigation was then in its incipiency and she lacked a sufficient amount of information to make a reasoned decision in this regard. In view of all this, I cannot conclude that Box’s sporadic contacts with the U.S. Attorney at the outset of the investigation fatally compromised the propriety of the summons. Rather, the evidence clearly establishes that in conducting this investigation the IRS has not abandoned its civil enforcement purposes and has not engaged in actions which belie the good faith of the summonses.
 

 For all of the foregoing reasons, defendants will be ordered to produce the records summoned within twenty days.
 
 [5]
 

 [1]
 

 . I note at the outset that there exists a dispute as to whether McNulty is entitled to intervene in the enforcement actions against Local 690 and the Apprenticeship Fund. The IRS concedes that the banks named as defendants in •civil action numbers 79-542 through 545 are third party record keepers within the meaning of 26 U.S.C. § 7609 thus giving McNulty the statutory right to intervene in those proceedings. However, it contends that he may not properly intervene in the actions against the Apprenticeship Fund and Local 609. Although he admits that he has no statutory right to intervene in these proceedings, McNulty contends that he should be permitted to intervene under Fed.R.Civ.P. 24(a)(2). Specifically, he argues that he has a protectable interest in not having his tax liability investigated by the use of unlawfully issued process and that this interest will not be adequately represented by the parties to the enforcement actions.
 

 In view of the Supreme Court’s decision in
 
 Donaldson v. United States,
 
 400 U.S. 517, 91 S.ct. 534, 27 L.Ed.2d 580 (1971) and my own opinion in
 
 United States v. Manchel, Lundy and Lessin,
 
 477 F.Supp. 326 (E.D.Pa.1979), it is doubtful that McNulty could properly intervene under Fed.R.Civ.P. 24 if the union summonses were the only ones at issue. However, he did intervene as of right in the summons enforcement proceedings against the banks and took extensive discovery to ascertain the circumstances surrounding the issuance of the summonses. The factual bases for the bank summonses are identical to those leading to the issuance of the union summonses. Thus, it would be anomalous to hold that McNulty has no right to intervene in the enforcement actions
 
 *1246
 
 against Local 609 and the Apprenticeship Fund when he has already intervened and actively opposed a set of summonses issued by the same IRS agent, as part of the same investigation and which spring from the same set of operative facts. I therefore conclude that permitting McNulty to intervene at this juncture will in no way undermine the Congressional policy of according the IRS broad and unfettered investigatory powers which prompted the restrictive holdings in
 
 Donaldson
 
 and
 
 Manchel, Lundy and Lessin.
 
 Accordingly, I will grant his motion to intervene in the summons enforcement proceedings against Local 690 and the Apprenticeship Fund.
 

 [2]
 

 . This holding finds direct support in
 
 United States v. Córtese,
 
 614 F.2d 914 (3d Cir. 1980). In
 
 Córtese,
 
 the IRS summoned contingency fee agreements filed by certain negligence lawyers with the Prothonotary of the Court of Common Pleas of Philadelphia county. One of the lawyers challenged the summonses on the ground that the IRS investigation originated when an informant from the insurance industry turned over information for the express purpose of prompting an investigation of the negligence bar. The District Court refused to enforce the summonses. In reversing this holding, the Court of Appeals determined that the motive of an informant is not a relevant consideration in determining the good faith of an IRS consideration in determining the good faith of an IRS investigation. It is only when the investigating agent or the IRS as an institution is motivated by the same animus that compelled the informant to give the IRS the information that the good faith of the investigation is properly called into question.
 
 Id.
 
 at 921.
 

 [3]
 

 . Although McNulty relies heavily upon
 
 Chase Manhattan,
 
 an examination of the Second Circuit’s decision in that case reveals that his reliance is misplaced. In
 
 Chase Manhattan,
 
 a taxpayer opposed the enforcement of an administrative summons issued in connection with an IRS investigation of his tax liabilities. In his moving papers, the taxpayer presented some evidence that he had been the subject of an FBI investigation into alleged violations of the Interstate Travel Act. The IRS investigation originated when the FBI turned over materials that it had gathered during its own inquiry. In addition, there was some indication that the taxpayer’s “imminent” indictment on Interstate Travel Act charges was delayed while the IRS issued and sought enforcement of its summonses. The District Court determined that the taxpayer had introduced no facts which would justify a finding of bad faith. It therefore denied his motion to permit discovery or an evidentiary hearing and ordered the summonses enforced. The Second Circuit reversed, holding that the taxpayer had produced sufficient circumstantial evidence of bad faith by the IRS to warrant the taking of additional evidence by means of discovery or evidentiary hearing. Thus, although
 
 Chase Manhattan
 
 involved a fact pattern quite similar to that presented here, it does not support McNulty’s ultimate position that contacts between the Justice Department and the IRS necessarily invalidate the good faith underpinning of an administrative summons. Rather, the decision concerned the circumstances under which a party should be permitted to take discovery to substantiate a claim of bad faith.
 
 See
 
 Note,
 
 The Institutional Bad Faith Defense to the Enforcement of IRS Summonses,
 
 80 Columbia L.Rev. 621, 628-37 (1980). I note that on remand the District Court did hold an evidentiary hearing and concluded that although the IRS investigation began with FBI assistance, the IRS had not channeled information to the Justice Department and had not otherwise acted as “an information gathering agency” for the FBI. It therefore ordered the summonses enforced.
 
 See United States v. Chase Manhattan Bank,
 
 486 F.Supp. 317 (S.D.N.Y.1979)
 
 aff’d mem.,
 
 620 F.2d 286 (2d Cir. 1980).
 

 [4]
 

 . McNulty argues that Box’s discussions with Magarity should be treated as an informal referral to the Justice Department thus invalidating these summonses under the prophylactic rule of
 
 LaSalle National Bank.
 
 This contention has no support in the record or in the law. As I have previously stated, there is nothing to indicate that Box was attempting to induce
 
 *1249
 
 Magarity to commence a grand jury investigation or to prosecute McNulty. More fundamentally, even if she had, her actions would not be dispositive. It is not the motivation of the individual agent but rather the institutional posture of the IRS which determines the propriety of a summons. As the Supreme Court noted in
 
 LaSalle National Bank,
 
 “[t]he review process over and above [the decisions of a special agent] is multilayered and thorough.” 437 U.S. at 314-15, 98 S.Ct. at 2366. Thus, Box could not have referred this matter for prosecution even if she had been inclined to do so. Rather, a referral within the meaning of
 
 LaSalle National Bank
 
 can only occur after the IRS’ internal procedures have been exhausted and there is a referral by the institution.
 

 [5]
 

 . In the alternative, McNulty moves for a protective order to preclude the IRS from turning over information obtained through these summonses to the Justice Department for use in a criminal prosecution. I must deny this request. The IRS has the authority to issue summonses during the course of its investigation “even if evidence thereby uncovered might subsequently serve as the basis for a criminal prosecution . . . . ”
 
 United States v. Garden State National Bank, supra,
 
 607 F.2d at 66. Thus, as long as the relevant provisions of 26 U.S.C. § 6103 are adhered to and the agency’s own internal operating procedures are followed, there would be nothing improper in the IRS’ disclosing to the Justice Department material obtained through the use of these summonses.