**UNITED STATES of America, and John L. Toti, Jr., Special Agent Internal Revenue Service**

v.

**NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY and Joan Carrigan.**

**Misc. No. 83–026 P.**

United States District Court, D. Rhode Island.

Nov. 10, 1983.

Lincoln C. Almond, U.S. Atty., R.I., Providence, R.I., Steven Toscher, Tax Div., U.S. Dept. of Justice, Washington, D.C., for petitioners.

## OPINION

PETTINE, Senior District Judge.

The central issue here is whether or not the respondent, New England Telephone and Telegraph Company (New England Telephone) is a "third-party recordkeeper" within the meaning of Section 7609 of the Internal Revenue Code of 1954 (26 U.S.C.). For reasons which follow, I answer in the affirmative; the respondents need not comply with the summonses served upon them on October 18, 1982 because there was a failure to comply with the notice requirements set forth in 26 U.S.C. § 7609(a).

The summonses in question were issued in connection with the investigation of the federal income tax liabilities of Stephen Saccocia, his wife Donna Saccocia and the Northeastern Metals and Refining Co., Inc. (hereinafter referred to as "taxpayers"); and requested New England Telephone to produce for examination a variety of documents, all as listed in the margin hereof.[1]

Notice of the issuance of the summonses was not given to the taxpayers pursuant to 26 U.S.C. § 7609 because the Internal Revenue Service (IRS) claims that New England Telephone is not a third-party record keeper under § 7609(a)(3) and the summonses do not seek "credit card" data.

New England Telephone, having refused to comply with the IRS summonses, is now before the Court to show cause why it should not be compelled to obey.

Section 7609(a)(1) provides as follows: If:

(A) any summons described in Subsection (c) (which includes summonses issued pursuant to Section 7602) is served on any person who is a third-party recordkeeper, and

(B) the summons requires the production of any portion of records made or kept of the business transactions or affairs of any person (other than the person summoned) who is identified in the description of the records contained in the summons,

then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 14th day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain directions for staying compliance with the summons under Subsection (b)(2).[2]

---

**1.**
1. Application for service for any phone in service during above mentioned period.
2. Credit file and credit data obtained from the customer on any phone in service during the above mentioned period, but not to include credit card data.
3. Installation date.
4. Location of service.
5. Telephone (alarm) number.
6. Billing name and address.
7. Amount and date of utility deposit.
8. Monthly billing (including advertising cost).
9. Amounts and dates of customer payments including purpose.
10. Amounts, dates, and reason for credits.
11. Date service cancelled.
12. Amount and date of overpayment/utility deposit refund to customer including cancelled checks.
13. All records showing the identification of all toll calls including date and telephone number called for the period January 1, 1977 up to the date of the service of this summons. This identification to include the name and addresses of the subscribers to those toll calls.

**2.** This section was amended effective January 1, 1983. However, the subject summonses were issued before the effective date of said amendment, as pointed out in the government's arguments. Those statements I quote and adopt: Section 331 of the Tax Equity and Fiscal Responsibility Act, codified as Section 7609(b)(2) of the Internal Revenue Code, restructured the taxpayer's right to contest the enforcement of Internal Revenue Service summonses. With respect to summonses issued after December 31, 1982, a taxpayer may no longer merely stay compliance with the summons. Under the Act, a taxpayer must "begin a proceeding to quash [the] summons not later than the 20th day after the day * * * notice is given the taxpayer." Section 7609(b)(2)(A). The United States district court for the district within which the person summoned resides or is found has jurisdiction to hear and determine the proceeding to quash the summons. Section 7609(h)(1).

The replacement of the "stay of compliance" with the "proceeding to quash" procedure was made in an effort to deter the frequent occurrence of taxpayers staying compliance of a summons on frivolous grounds. The requirement

Section 7602 provides that for the purpose of ascertaining the correctness of any return or the liability of any person for any Federal tax, any authorized employee of the IRS may examine any books, papers, records or other data which may be relevant or material.

Section 7609(a)(3)(C) defines "third party" record keepers as—

(A) any mutual savings bank, cooperative bank, domestic building and loan association, or other savings institution chartered and supervised as a savings and loan or similar association under Federal or State law, any bank (as defined in Section 581), or any credit union (within the meaning of section 501(c)(14)(A));

(B) any consumer reporting agency (as defined under section 603(d) of the Fair Credit Reporting Act (15 U.S.C. 1681a(f));

(C) *any person extending credit through the use of credit cards or similar devices;*

(D) any broker (as defined in section 3(a)(4) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(4)));

(E) any attorney;

(F) any accountant; and

(Code Sec. 7609(a)(3)(G), below, as added by P.L. 97–248, applies to summonses served after 1982)

(G) any barter exchange (as defined in section 6045(c)(3)).

(4) EXCEPTIONS.—Paragraph (1) shall not apply to any summons—

(A) served on the person with respect to whose liability the summons is issued, or any officer or employee of such person.

(B) to determine whether or not records of the business transactions or affairs of an identified person have been made or kept, or

that a civil action be commenced by the taxpayer was intended to provide some assurance that taxpayer interference with legitimate law enforcement efforts was based on proper grounds and not merely interposed for delay. *See* General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, pp. 231–233. *See also,* Rule 11, Federal Rules of Civil Procedure.

(C) described in subsection (f). (Emphasis added)

The relevant section to this case is (3)(C).

*Conclusions of Law*

The first inquiry is whether or not the petitioners have made their prima facie case for enforcement of the summonses. In this controversy it is not relevant to New England Telephone's position to raise this point: I will assume the purpose for which the summonses were issued is legitimate; that the summoned data may be relevant to that purpose; that the data are not already in the government's possession; and that the administrative steps required for issuance and service of the summons have been followed. *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964); *United States v. Freedom Church*, 613 F.2d 316 (1st Cir. 1979); *United States v. Kis*, 658 F.2d 526 (7th Cir.1981); *United States v. Chase Manhattan Bank*, 598 F.2d 321, 323 (2d Cir.1979). As the government rightfully argues,

[t]he showing may be made by the affidavit of the agent who issued the summons and who seeks enforcement of it. *United States v. Garden State National Bank*, 607 F.2d 61, 68 (3d Cir.1979); *United States v. Chase Manhattan Bank, supra.* The burden then shifts to the party opposing enforcement to demonstrate a legally sufficient defense by specific, sworn facts. *United States v. Powell, supra; United States v. Freedom Church, supra; United States v. Kis, supra; United States v. Morgan Guaranty Trust Co.*, 572 F.2d 36, 42–43, n. 9 (2d Cir.1978); *United States v. Garden State National Bank, supra.*

The petitioners have established each element of their prima facie case by the affidavit of Special Agent Toti. The burden is now upon the respondents to demonstrate, by specific, sworn facts, that

they have a legally recognized defense to enforcement of the summonses.

Petitioner's Memorandum of law, P. 4.

### Is New England Telephone a Third Party Recordkeeper?

Petitioners in arguing that New England Telephone is not a third-party recordkeeper state that records of transactions between the "third-party recordkeeper" and the taxpayer, *i.e.*, "two-party records" are not within the scope of Section 7609: they further state that though New England does issue "credit cards" and arguably can be termed a "person extending credit through the use of credit cards or similar devices" they do not believe this category of "third-party recordkeeper" could have been intended by Congress to include telephone companies; in support they point to legislative history.

The salient features of the legislative history argument is that the legislators purposefully limited the types of summonses to seven specific categories of third-party recordkeepers (S.Conf.Rep. No. 94–1236, 94th Cong., 2nd Sess. at 486); that these categories were intended to be persons engaged in making or keeping the records involving transaction of others (S.Rep. No. 94–938 at 369). They further assert that an expansive reading of the statute is impermissible; it applies only to persons who issue credit cards (or similar devices)

> which may be used by the holder of the card or device to obtain credit from the issuer by utilizing the card to procure goods or services from others such as Visa, Mastercharge, or American Express. The statute was not intended to cover telephone companies merely because it issues credit cards any more than it was intended to apply to a Sears or any other national retailer who issues credit cards.
>
> Petitioners Memorandum, p. 10.

*United States v. New York Telephone Co.*, 644 F.2d 953 (2d Cir.1981) (*New York Telephone I*) and *United States v. New York Telephone Co.*, 682 F.2d 313 (2d Cir. 1983) (*New York Telephone II*) held that since credit was extended by means of credit cards the telephone company was a "third-party recordkeeper" within the meaning of Section 7609(a)(3)(C) when the taxpayer involved held the credit card and the information sought was credit card data. *New York Telephone I.* In *New York Telephone II* it extended its holding and ruled that the statute applied to all customers whether or not credit card data is sought.

The petitioners feel the Second Circuit "strayed far from the statute", principally relying on Judge Newman's separate opinion in *New York Telephone II*, and on the following authorities: *United States v. Exxon Company U.S.A.*, 450 F.Supp. 472 (D.Md.1978) (records of transactions between Exxon and lessor of property are records of Exxon's own transactions and not within the scope of Section 7609). *United States v. Shivlock*, 459 F.Supp. 1383 (D.Colo.1978), *aff'd sub nom United States v. Income Realty & Mortgage, Inc.*, 612 F.2d 1224 (10th Cir.1979), *cert. denied*, 446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed.2d 809 (1980) (taxpayer's employment records with alleged "broker" not within the scope of Section 7609); *United States v. Connecticut Motor Club*, 79–1 U.S.T.C., ¶ 9141 (D.Conn.1978) ("Section 7609(a)(3)(C) was intended to apply to credit card companies summoned to produce records of the credit card holder under investigation, not to credit card companies summoned to give up their own business records."); *United States v. White Agency*, 79–1 U.S.T.C. ¶ 9300 (W.D.Mich.1979), aff'g Magistrate's recommended decision at 79–1 U.S.T.C. ¶ 9265 (summoned person must not only fall facially within the named classes but must also be summoned in capacity as custodian or stakeholder of records summoned.)

The government also argues that a liberal construction of Section 7609 will give to persons subject to investigation a "potent" delaying device.

To begin with, it seems to me this IRS bureaucratic concern fails to appreciate the very purpose for which the statute was

enacted. As counsel for New England Telephone points out, the House Committee on Ways and Means stated the reasons for changing existing law. The Committee declared:

> The use of the administrative summons, including the third-party summons is a necessary tool for the IRS in conducting many legitimate investigations concerning the proper determination of tax. The administration of the tax law requires that the service be entitled to obtain records, etc., without an advance showing of probable cause or other standards which usually are involved in the issuance of a search warrant. On the other hand, the use of this important investigative tool should not unreasonably infringe on the civil rights of taxpayers, including the right to privacy.
>
> The committee believes that many of the problems in this area would be cured if the parties to whom the records pertain were advised of the service of a third-party summons, and were afforded a reasonable and speedy means to challenge the summons where appropriate. While the third-party witness also has this right of challenge, even under present law, the interest of the third-party witness in protecting the privacy of the records in question is frequently far less than that of the person to whom the records pertain.
>
> H.Rep. No. 94–658, 94th Cong. 2nd Sess. 307 (November 12, 1975), U.S.Code Cong. & Admin.News 2897, p. 3203.

Congress appreciates the problems an agent encounters in a tax investigation. And it realized there may be times when a taxpayer should not be notified; but with due regard for the protection of our civil rights it provided in Section 7609(g) a means whereby a service of a summons on a third-party record may be made without notice to the taxpayer.[3] A construction of the statute going beyond this is unwarranted and incompatible with the well established law that remedial statutes, such as this one, must be liberally construed. *Peyton v. Rowe*, 391 U.S. 54, 65, 88 S.Ct. 1549, 1555, 20 L.Ed.2d 426 (1968). This approach comports with the plain meaning of Section 7609, as the Court of Appeals for the Second Circuit clearly set forth in *New York Telephone II.*

■ To me it cannot be ignored that Section 7609(a)(3)(C) clearly states, "[f]or purposes of this Subsection, the term 'third-party recordkeeper' means ... *any person extending credit through the use of credit cards* or similar devices" (emphasis added). It must follow that since New England Telephone extends credit by means of credit cards, it is a third-party recordkeeper within the plain meaning of the statute,[4] and it is no argument, as the government propounds, to say that the telephone company is not a recordkeeper in this instance, because the taxpayer had no credit card. There is no such requirement in the statute; nor can there be any justification for adding a non-existent demand. This issue raised by the government is not novel; it surfaced in *New York Telephone II.* The court noted that the telephone company not only issued credit cards but also extended credit to all its customers through arrears billing and bill-to-third-party calls and extended these forms of credit to all its customers. Furthermore, the billing records maintained by the telephone company revealed the same information whether or not the customer held a credit card. I must agree with the Second Circuit

---

**3.** (g) Special exception for certain summonses.—In the case of any summons described in subsection (c), the provisions of subsections (a)(1) and (b) shall not apply if, upon petition by the Secretary, the court determines, on the basis of the facts and circumstances alleged, that there is reasonable cause to believe the giving of notice may lead to attempts to conceal, destroy, or alter records relevant to the examination, to prevent the communication of information from other persons through intimidation, bribery, or collusion, or to flee to avoid prosecution, testifying, or production of records.

**4.** This fact established through affidavits which show that New England Telephone extends credit through the use of credit cards and similar devices such as bill-to-third-party calls and billing in arrears.

that it must follow the telephone company is a third-party recordkeeper. I see nothing in the legislative history contra to this reasoning. Certainly the Second Circuit agrees; in *New York Telephone I* it stated:

> While we agree with the government that this sequence results in a narrowing of the third-party class, nothing demonstrates an intention that the term "person extending credit through credit cards or similar devices" be construed so narrowly as to exclude a person such as the Telephone Company, operating as described above.

*Id.* at 959.

■ Finally, the question is whether the records sought record the "business transactions or affairs of any person other than the person summoned." Accepting the argument of New England Telephone that the toll billing records list:

1. the number from which a call originated;

2. the number which was called, thereby generally indicating to whom the caller spoke;

3. the length of time the parties spoke;

4. the time of day the parties spoke; and

5. the charge for the call,

it must be conceded that such information documents the "business transactions or affairs" of the taxpayer and not New England Telephone; it is the information the IRS seeks and falls squarely within Section 7609(a)(1)(B).

In approaching the issue at stake here I am constrained to consider why Congress set out six specific entities as its method of defining "third-party recordkeepers". I conclude it simply did not want the notice provision to apply to just any third-party who keeps taxpayer records; rather it was motivated by the nature of the information sought and must have believed that "keepers" of third-party records who are not included in the Section 7609(a)(3) list simply did not possess information significant enough to justify mandatory notice to the taxpayer. The nature of the information sought is a key factor. An extension of

this argument is that if there is no functional difference in the degree of importance of the information held by Entity X, which is included in the § 7609(a)(3) list, from information held by Entity Y, which is not on the list, it may be that notice would be required even when the information is sought from Entity Y. The "importance" here is importance to the *taxpayer*, since the legislative history specifically mentions the congressional concern that "the use of this important investigative tool [the third-party summons] should not unreasonably infringe on the civil rights of taxpayers, including the right to privacy." S.Rep. No. 938, 94th Cong., 2d Sess. 368 (1976), *reprinted in* 1978 U.S.Code Cong. & Ad. News 3439, 3797. In the words of *New York Telephone II*, "the statute, where ambiguous in its coverage, should be broadly construed." 682 F.2d at 316–17.

In any case, the *New York Telephone II* court appears to have taken this functional approach in emphasizing the nature of the information sought in deciding that the telephone company is a "third-party recordkeeper". The court stated that "all customer billing records created and kept by the telephone company are virtually identical in both form and content, and reveal essentially the same type of private information about a customer, whether or not that customer holds a telephone company credit card. Therefore, we believe, it follows that the telephone company should be considered a third-party recordkeeper . . . ." *Id.* at 318. It can be argued that the logical conclusion is that where the information sought is as significant as information held by entities explicitly listed in § 7609(a)(3), then the court should allow nothing to turn on a "letter-of-the-law" definition of "third-party recordkeeper". I do not decide this issue today. I point out only that to read the statute narrowly flies in the face of its very wording and plain meaning.

Like *New York Telephone II*, for the reasons stated herein premised on the "telephone company's credit card operations, its practice of extending similar credit to all of its customers as well as the type of credit billing records sought by the sum-

mons here," I conclude New England Telephone is a "third-party recordkeeper" within the meaning of Section 7609 of the Internal Revenue Code of 1954 (26 U.S.C.); the taxpayers were and are entitled to notice and to intervene under Section 7609(a) and Section 7609(b).

### Collateral Estoppel

New England Telephone argues that collateral estoppel is appropriate to prevent repeated litigation of the same issue.

Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or "lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure."

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329, 91 S.Ct. 1434, 1443; 28 L.Ed.2d 788 (1971).

However, since I find for the respondents, I need not reach this issue.

New England Telephone will prepare an order in keeping with this opinion.