**UNITED STATES of America, and Samuel J. Ruggiero, Special Agent of the Internal Revenue Service, Plaintiffs,**

v.

**GARDNER STEEL CORPORATION, Defendant,**

**Bruce Pickel and Laren Pickel, Intervenors.**

**UNITED STATES of America, and Samuel J. Ruggiero, Special Agent of the Internal Revenue Service, Plaintiffs,**

v.

**H. WOLFE IRON & METAL, CO., Defendant,**

**Bruce Pickel and Laren Pickel, Intervenors.**

Civ. A. Nos. 83–1708, 83–1709.

United States District Court, W.D. Pennsylvania, Pittsburgh Division.

June 13, 1984.

Patricia Scott-Clayton, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Thomas A. Daley, Asst. U.S. Atty., Pittsburgh, Pa., for plaintiffs.

William C. McClure, Richard P. Joseph, Stanley DeGory, McClure & Watkins, P.C., Pittsburgh, Pa., for defendant.

## OPINION

SIMMONS, District Judge.

In these cases, the IRS seeks to compel taxpayers' compliance with summonses served upon two closely held companies. In two related cases, this Court previously quashed third party summonses during an evidentiary hearing on the validity of the IRS investigation of the taxpayers. In the case sub judice, the taxpayers again assail the validity of IRS summonses, arguing that the summonses were issued in bad faith and are therefore unenforceable. The taxpayers now seek to preclude the government from relitigating the good faith issue in this proceeding.

## I.  FACTS.

Sometime prior to 1983, the Criminal Investigation Division of the Internal Revenue Service (IRS) began an investigation into the federal tax liability of Bruce and Laren Pickel, a married couple, to determine whether the Pickels had committed any offenses connected with the administration and enforcement of Internal Revenue laws for the tax years 1978 through 1981.

During the tax years under investigation, Bruce Pickel was a major stockholder, director and an officer of both H. Wolf Iron & Metal Company, Inc. (H. Wolf Iron & Metal) and Gardner Steel Corporation (Gardner Steel). The shares of both closely held companies were held by the Pickels and their relatives.

On January 11, 1983, the IRS served upon Philip Weiner and Company, CPA's (Philip Weiner) a summons directing it to produce certain records relative to the Pickels and their two companies, Gardner Steel and H. Wolf Iron & Metal. Three months later, the IRS served a similar summons upon Peoples Bank of Western Pennsylvania (Peoples Bank). The Pickels had transacted business with the summoned parties during the tax periods under investigation. Both Philip Weiner and Peoples Bank were directed to appear and produce records relating to the taxpayers' financial transactions.

Before Philip Weiner and Peoples Bank could comply with the summonses, the Pickels petitioned this Court to quash the IRS's third party summonses (Civil Actions 83–200 and 83–938). The Pickels averred that the summonses had been issued in bad faith and were therefore unenforceable. Specifically, the Pickels maintained that the third party summonses were unenforceable because they were tainted by improper contacts between the IRS and the Federal Bureau of Investigation (FBI). In response, the IRS moved for summary denial of the petitions to quash and for summary enforcement of the summonses. The IRS averred that it was conducting a proper investigation into the Pickels' federal income tax liability and that the information it sought was relevant to the investigation and not already in the IRS's possession. Hence, argued the IRS, summary enforcement of the summonses were appropriate.

### a.  Pickel Hearing I.

An evidentiary hearing (Pickel Hearing I) was held to determine whether the third party summonses served upon Peoples Bank and Philip Weiner should be enforced. Prior to the hearing, a sequestration order was entered directing all witnesses to remain outside the courtroom until each was called to testify, and thereafter, refrain from discussing their testimony with other witnesses.

The issue at the evidentiary hearing in Pickel Hearing I was whether the government's tax investigation of the Pickels was

being conducted in good faith. The taxpayers had petitioned the Court to quash the summonses, so they bore the burden of proof. During the taxpayers' case-in-chief, FBI Agent Peter McCann was called as a witness. During McCann's direct testimony, the Court ordered the government to make *in camera* disclosures of certain FBI records. The *in camera* documents, in conjunction with McCann's direct testimony, established that both the IRS and the FBI were conducting simultaneous criminal investigations of the Pickels and that the investigating agents from both agencies had been in contact with each other and had exchanged information regarding their respective investigations.

The *in camera* documents tending to support the taxpayers' theory that the IRS was conducting an improper investigation were turned over to the taxpayers to permit counsel to inquire into the nature and extent of IRS and FBI contacts regarding the Pickels investigations. Thereafter, the proceedings were briefly recessed to permit the taxpayers to review the newly disclosed documents.

When the proceedings resumed, FBI Agent McCann candidly admitted under oath that the government had violated the Court's sequestration order during the recess. Agent McCann testified that during the recess he had discussed various aspects of his testimony with the government's counsel in the corridor immediately outside the courtroom. During this discussion, the principal IRS investigator and witness, Special Agent Samuel Ruggiero, sat within earshot of the discussion and overheard the conversation.

As a sanction against the government for violation of the sequestration order, the taxpayers urged the Court to summarily grant the petition to quash the third party summonses. The government stringently argued that the violation was inadvertent and that sanctions were not warranted. At that point, the Court imposed no sanctions and the proceedings continued.

On further direct examination of FBI Agent McCann, the taxpayers inquired into various telephone entries on the recently disclosed FBI documents. When queried about certain telephone entries, McCann attributed the information on the documents to a "confidential FBI source". Upon motion of the taxpayers, the Court directed the government to disclose the identity of the FBI's confidential source to permit the taxpayers to test the agent's credibility. The government refused.

Again the taxpayers urged the Court to summarily grant their petition to quash the third party summonses, arguing that, absent disclosure of the supposed FBI source, the taxpayers could not test the bona fides of the government's tax investigation. This time the petition was granted and the proceedings were terminated.

In Pickel Hearing I, this Court held that the government's tax investigation lacked the requisite good faith to warrant enforcement of the third party summonses and therefore entered an order quashing the summonses. The petition to quash was granted for two reasons: first, as a sanction against the government for violation of the sequestration order, and second, because the government had not acted in good faith. The Court's bad faith finding was premised on two grounds: first, the appearance that the government improperly used the IRS and the FBI to ferret out criminal activity, and second, the government's refusal to reveal its alleged confidential source, when directed to do so, to aid the Court in its determination of whether the IRS was conducting a legitimate tax investigation.

### b. Pickel Hearing II.

In addition to the third party summonses served upon Peoples Bank and Philip Weiner, the IRS served summonses upon Gardner Steel and H. Wolf Iron & Metal. The summoned parties failed to appear and produce the summoned records so the IRS filed a complaint to enforce the summonses (Civil Actions 83–1708 and 83–1709). The Pickels intervened pursuant to Rule 24(b) of the Federal Rules of Civil Procedure and moved for summary judgment, asserting the same arguments raised in Pickel Hear-

ing I. An evidentiary hearing was held (Pickel Hearing II).

The evidence at Pickel Hearing II established that Gardner Steel was initially selected on a random basis for an audit under the IRS's Taxpayer Compliance Measurement Program (TCMP). A TCMP audit is a line-by-line examination of a taxpayer's return. When it became necessary during the course of the examination to make adjustments to Gardner Steel's tax returns, the IRS expanded its TCMP audit to three related taxpayers whose returns would be impacted, H. Wolf Iron & Metal, Bruce Pickel and Laren Pickel.

The TCMP audit revealed that pension plan payments due Gardner Steel had not been timely made, that Gardner Steel had claimed improper deductions and that Bruce Pickel had used pension plan funds for his personal benefit. These irregularities were reported to the IRS Employee Plans Division and the Criminal Investigation Division for further investigation.

IRS Special Agent Samuel Ruggerio was assigned to investigate suspected criminal activity associated with the Pickels' federal tax liability. During the course of his investigation, IRS Agent Ruggiero contacted FBI Agent Peter McCann to obtain the location of a potential source with information concerning Bruce Pickel's gambling activities. Thereafter, the evidence shows, IRS Agent Ruggerio and FBI Agent McCann, made several contacts between November 10, 1982 and May 20, 1983. During their discourse, IRS Agent Ruggerio made minor disclosures of information regarding his investigation of the Pickels to FBI Agent McCann. On November 29, 1983, the FBI discontinued its investigation of the Pickels, since the IRS was doing so.

## II. COLLATERAL ESTOPPEL.

The taxpayers have moved for summary judgment on the ground that the doctrine of collateral estoppel bars enforcement of the summonses against Gardner Steel and H. Wolf Iron & Metal. Like res judicata, the doctrine of collateral estoppel precludes litigants from relitigating matters that they have had a full and fair opportunity to previously litigate. A "right, question or fact distinctly put in issue and directly determined by a Court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies ...." *Southern Pacific Railroad Co. v. United States*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 27–28, 42 L.Ed. 355 (1897).

▪ The doctrine of collateral estoppel bars a party to a subsequent litigation from raising an issue that was actually and necessarily determined by a court of competent jurisdiction in a prior suit based on a different cause of action involving that party. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Before a party can be collaterally estopped from raising an issue, four elements must be present: "(1) the issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment." *See Haize v. Hanover Insurance Co.*, 536 F.2d 576, 579 (3d Cir.1976) (footnote omitted).

The doctrine of collateral estoppel cannot be applied in this case because the ultimate issue of the government's good faith, which the taxpayers' seek to preclude by their motion for summary judgment, was not fully and fairly litigated and actually determined in the prior proceeding.

The concept of a "full and fair opportunity to litigate" is central to the application of the issue preclusion doctrine. Resolution of an issue in a prior judicial forum is given conclusive effect in a subsequent proceeding only if the precluded party was given a "full and fair opportunity to litigate" that issue in the prior proceeding. *Montana*, 440 U.S. at 153, 99 S.Ct. at 973. The requirement that there must have been a full and fair opportunity to litigate an issue and that an issue have been actually litigated does not require that the issue must have been thoroughly litigated. The doctrine applies despite an imbalance in the

quantity of evidence introduced. *See e.g., Continental Can Co., U.S.A. v. Marshall,* 603 F.2d 590, 596 (7th Cir.1979); *James Talcott, Inc. v. Allahabad Bank, Ltd.,* 444 F.2d 451, 459–60 (5th Cir.), *cert. denied,* 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971). It has been long established, however, that collateral estoppel does not apply to issues that might have been litigated and determined, but were not. *See Cromwell v. County of Sac,* 94 U.S. 351, 353, 24 L.Ed. 195 (1876); *Stebbins v. Keystone Insurance Co.,* 481 F.2d 501, 506 (D.C.Cir. 1973).

In Pickel Hearing I, this Court granted the taxpayers' petition to quash the IRS's third party summonses, partly as a sanction for the government's violation of a sequestration order, and partly on a finding of bad faith. Notably, the petition was granted and the hearing was terminated during the taxpayers' case-in-chief. The taxpayers' called several witnesses to testify and introduced several exhibits which were admitted into evidence. The government, however, called no witnesses and introduced no exhibits.

Under these circumstances, the government did not have a full and fair opportunity to litigate the good faith issue in Pickel Hearing I. Unlike the *Continental Can Company* case, this is not a case involving an imbalance of evidence. 603 F.2d at 596. Nor is this a case where the issue was raised and a party failed in his proof and the issue was decided against him. In those circumstances, a party would be just as bound by collateral estoppel as though he had introduced a ton of testimony. *See United States v. Silliman,* 167 F.2d 607 (3d Cir.1948). Here, however, the government did not fail in its proof. Nor was the ultimate issue decided on the merits against the government, because the trial was terminated prior to the government's production of any witnesses or any evidence.

On this record, the denial of the government's opportunity to fully and fairly litigate the issue of bad faith in Pickel Hearing I makes the imposition of collateral estoppel in Pickel Hearing II inappropriate and unjust under the circumstances. For these reasons, the taxpayers' motion for summary judgment is denied.

## III. ENFORCEMENT OF IRS SUMMONSES.

An examination of the record in this case reveals that the summonses served upon Gardner Steel and H. Wolf Iron & Metal should be enforced.

■ The evidence at Pickel Hearing II established that general disclosures of the nature, scope and direction of the IRS investigation of the Pickels were made to an FBI agent. Disclosures of this nature are authorized under the Internal Revenue Code, 26 U.S.C. § 6103(K)(6). Moreover, interdepartmental disclosures by government agencies does not ipso facto invalidate an otherwise legitimate IRS investigation. Taxpayers resisting the enforcement of an IRS summons must disprove the existence of a valid tax investigation, not merely prove that the IRS exchanged information with another government agency. *See United States v. Lasalle,* 437 U.S. 298, 316, 98 S.Ct. 2357, 2367, 57 L.Ed.2d 221 (1978); *United States v. Chemical Bank,* 593 F.2d 451, 456 (2nd Cir.1979).

■ On this record, there is no evidence of bad faith. The record does not establish that the IRS investigation was a mere subterfuge or that the FBI used the IRS investigation to ferret out information it could not have otherwise obtained. Nor is there evidence that the IRS was improperly using the FBI as an information gathering agency. Furthermore, the testimony did not establish that the IRS agents made disclosures of return information that are prohibited by law.

Finally, this Court is not persuaded by the taxpayers' argument that the IRS agents lacked the authority to issue summonses to Gardner Steel and H. Wolf Iron & Metal or that the summonses were otherwise defective. In sum, there is no evidence of irregularity in this case that would warrant invalidation of the summonses. An appropriate order follows.