**UNITED STATES of America**

v.

**Lawrence W. LAVIN, et al.**

**Crim. No. 84–388–01.**

United States District Court,
E.D. Pennsylvania.

Jan. 17, 1985.

Lynell N. Staton, and Dennis O. Wilson, Asst. U.S. Attys., Philadelphia, Pa., for plaintiff.

Thomas A. Bergstrom, Philadelphia, Pa., for defendants.

MEMORANDUM of DECISION

SHAPIRO, District Judge.

Defendants Lawrence W. Lavin and Kim Norimatsu moved[1] to suppress evidence

---

**1.** All defendants joined in the pretrial motions of all other defendants but all defendants other than Lavin and Kim Norimatsu have since entered pleas of guilty.

obtained from electronic surveillance originally authorized pursuant to Title III of The Omnibus Crime Control Act for thirty (30) days on December 19, 1983 and extended on January 19, 1984 for an additional seven days through January 21, 1984. Their subsequent indictments for offenses involving distribution of and conspiracy to distribute controlled substances[2] were pending before Judge Louis Pollak but, in accordance with Local Rule of Criminal Procedure 16(c), these motions were referred to the judge who authorized the electronic surveillance. This court considered supporting and opposing memoranda, and heard argument in court on November 16, 1984, as well as testimony of Assistant United States Attorneys and FBI Special Agent Charles Reed *in camera*, and denied these motions on December 10, 1984. This Memorandum articulates the reasons for that decision.

The motions to suppress the electronic surveillance evidence were based on three grounds:

1. Anthony Venezia recanted information provided to federal agents and referred to in the affidavit supporting the wiretap application.

2. Tax return information of defendant Lavin included in this affidavit was provided by an IRS agent in violation of 26 U.S.C. § 6103.

3. The application and affidavit lacked probable cause for belief that particular communications concerning narcotics offenses would be obtained by intercepting the telephone at the home of Bruce Taylor and his wife Suzanne Norimatsu-Taylor.

For the reasons articulated herein, this court found:

1. There was insufficient evidence to find that Anthony Venezia did in fact recant; but even if he did, there was probable cause to authorize and continue the electronic surveillance without his information.

2. Even though the investigation was not related to tax administration and tax return information was made available in violation of 26 U.S.C. § 6103, there was probable cause to authorize and continue the electronic surveillance without this information.

3. There was probable cause for belief that interception of telephone communications to and from the Taylor residence would relate to narcotics offenses by Bruce Taylor and others without reference to information provided by Venezia or IRS agents.

On December 19, 1984, the United States applied for the interception of telephones located in the Valley Forge Shopping Center and the homes of Francis Joseph Burns and his wife, and Bruce Taylor and Suzanne Norimatsu-Taylor. The court found probable cause to believe that Dr. Lawrence William Lavin, Bruce Taylor and others known and unknown had committed and were committing offenses involving violation of 21 U.S.C. §§ 841(a)(1), 843(b), and 846 and that communications concerning these offenses (dates, time and places and manner of possessing, delivering and financing purchase of controlled substances) would be obtained. Interception was then authorized for an original thirty-day period and later extended as to six of the eight telephones for an additional seven days. The interception was terminated on January 21, 1984 but service of the inventory was postponed until October 11, 1984.

An 185-page affidavit, together with exhibits, provided the factual basis for the application and demonstrated that normal investigation procedures had failed and appeared unlikely to succeed if tried in the future. After identifying the telephones and their relationship to suspected narcotics conspirators, the affidavit summarized the results of a previous wiretap on the home telephone of one of the suspects in

---

**2.** The indictments charge violations of 21 U.S.C. § 841(a)(1) (distribution or possession with intent to distribute a controlled substance), 21 U.S.C. § 843(b) (knowing and intentional use of a communication facility in committing drug violations), and 21 U.S.C. § 846 (conspiracy to violate the above-cited statutes).

Phoenix. This authorized interception revealed a conspiracy to distribute cocaine supplied by the Philadelphia suspects whose telephones were to be intercepted. The drug deliveries discussed by telephone were confirmed by airport surveillance although false names and addresses were used by the travellers.

Periodic surveillance of Francis Burns and Bruce Taylor was also conducted by the affiant and other FBI agents during the five months prior to the intercept application. The reports of surveillance tended to substantiate numerous contacts of the suspected conspirators and their use of the telephones for which the application was made. Pen registers on four of these telephones and review of the logs of a radio beeper service used by the parties confirmed the numerous contacts of the co-conspirators and added to the probable cause supporting the application.

In addition, a seizure in Phoenix pursuant to court order located a storage facility for cocaine. A drug courier connected to Bruce Taylor's Phoenix connection, Wayne Heinauer, was arrested at the Canadian border in possession of a kilogram of 80% pure cocaine. Bruce Taylor's criminal record obtained from the FBI, Philadelphia and Upper Darby Police Departments was also made available to the court. The affiant also advised the court of certain interviews:

1. IRS Special Agent Stephen A. Gallon, Criminal Investigation Division, and IRS Revenue Agent Lloyd Rogers provided information concerning records and income tax returns of Lawrence Lavin and others.

2. Group Supervisor Frank A. Wickes, Jr., Drug Enforcement Agency ("DEA"), provided information regarding Francis Burns relating to a criminal investigation for violation of IRS laws; the information was based on his investigation of narcotics information from the Pennsylvania State Police, Montgomery County Detectives, and DEA. Wickes also provided information about the relationship of Francis Burns, Salvatore Spera and Anthony Venezia and provided the results of pen register records and a search pursuant to warrant resulting in seizure of cocaine and other cocaine arrests involving Francis Burns.

3. IRS Special Agent John P. McKenzie provided information from interviewing Anthony Venezia.

4. Timothy Woodward, Montgomery County Detective, a drug investigator, provided information from Salvatore Spera about drug activity of Francis Burns, execution of search warrants in which narcotics were seized from Burns, and several arrests of Burns on drug charges.

On the showing summarized above, the court found sufficient probable cause of drug transactions by use of the shopping center and home telephones in question to authorize the wiretaps applied for by the Government and challenged now by the defendants.

1. *Alleged Recantation of Anthony Venezia*

Agent Reed's affidavit made considerable reference to information provided by Anthony Venezia, now incarcerated for the 1982 arson of a Dairy Queen restaurant located in the King of Prussia Shopping Mall, King of Prussia, PA. Venezia had testified before a federal Grand Jury in the Eastern District of Pennsylvania on December 7, 1983 and provided information regarding Francis Joseph Burns' alleged involvement in a cocaine distribution conspiracy and other criminal offenses. Defendants averred that Venezia subsequently recanted his testimony; the Government did not advise this court during the course of the surveillance of any change in Venezia's information or attitude. Defendants requested a hearing [3] to determine whether Reed's affidavit was knowingly and inten-

**3.** Both Lavin and Norimatsu have standing to move for a hearing, since the indictments stemmed generally from evidence obtained by these wiretaps.

tionally false when made or became false at any relevant time. This court reviewed evidence regarding Venezia's alleged recantation and interviewed agent Reed and the Assistant United States attorneys involved in this investigation and the related investigation in which Venezia gave testimony under oath.

If defendants meet a threshold burden of making "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations [are] accompanied by an offer of proof," *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978), then the tainted allegations contained in the affidavit must be set aside and the remainder of the affidavit reviewed to determine if it would have established probable cause at the time the order of surveillance issued. *United States v. Geller*, 560 F.Supp. 1309, 1321 (E.D.Pa.1983) (applying the set-aside remedy for tainted search warrants, *Franks*, 438 U.S. at 172, 98 S.Ct. at 2684, to wiretap affidavits). If there remains sufficient content in the wiretap application to sustain a finding of probable cause, no hearing is required. *Id.*

The Government's application for interception of wire communications of eight telephones was granted on December 19, 1983. The Assistant United States Attorney who applied for the Order was directed to provide the court with reports on the 7th, 14th, 21st and 29th days following to show the progress made toward the objectives of the interception and the need for continued interception. These reports were made as ordered.

The affidavit of Charles L. Reed, Special Agent of the FBI, in support of the application on December 19, 1983 referred to certain information obtained from Anthony Venezia, an associate of Francis Burns, a target of investigation. It stated that IRS Special Agent McKenzie and Bureau of Alcohol, Tobacco, and Firearms Special Agent Thomas Bower interviewed Anthony Venezia; the reports of these interviews about firebombings included statements that Burns was committing arson to get back at someone for a drug deal and that Burns had given Venezia cocaine on two occasions. Venezia also reported that cocaine was obtained from Salvatore Spera, another of the alleged co-conspirators. Venezia said he was involved in arson incidents with Spera and Burns, one of which was drug related, and reported observing Spera in drug transactions and seeing large amounts of cash at the home of Burns. Venezia also told of a person Burns wanted Venezia to kill because money from a drug deal was owed by this person.

On December 7, 1983, Anthony Venezia had testified before a federal Grand Jury within the Eastern District of Pennsylvania, presumably to facts similar to those recited in Agent Reed's affidavit. However, on December 30, 1983, after the Reed affidavit was presented to the court and the wire interception authorized, Venezia called an Assistant United States Attorney other than the one assigned to this case and said that there were things he wished to change in some statement and in his Grand Jury testimony. No later than January 23, 1984, the judge supervising the Grand Jury (also the judge trying the resulting indictments) was notified that the Assistant United States Attorney who had heard from Venezia proposed to bring Venezia to Philadelphia to explore this matter further.

■ That Assistant United States Attorney also notified Special Agent Reed. The Assistant United States Attorney assigned to this wiretap authorization also learned of these developments but did not report this information to the court in any progress report on the interception (filed on January 4, 9, and 16, 1984). On January 19, 1984, the Assistant United States Attorney assigned to this matter appeared before this court with Special Agent Reed for an *ex parte* hearing on whether or not the court would grant a requested seven-day extension. The transcript makes clear the court's reluctance to extend the interception except upon a clear showing of demonstrated need (in fact, only six of the eight interceptions were permitted to continue).

Notwithstanding the Agent's knowledge of Venezia's expressed desire to alter statements used in the probable cause affidavit, the court was not notified of this change in circumstance then or in the fifth and final progress report of January 27, 1984. This was poor judgment, but there is no evidence that the Government acted recklessly or deliberately misled the court.[4]

At the time of the original application, even if the court could have been informed that Venezia desired to change his testimony,[5] the interception would have been authorized. The results of the previous Phoenix wiretap application, interviews of persons other than Venezia, prior surveillance of the suspects, the search and seizure of cocaine pursuant to a warrant issued in Phoenix, the drug arrest arising out of the Phoenix investigation, and pen registers previously authorized by another judge of this court provided probable cause for the interception orders without regard to any of Venezia's information. *See United States v. Vento*, 533 F.2d 838, 858–59 (3d Cir.1976) (finding probable cause based on substantial alternative grounds after setting aside allegedly tainted portions of a wiretap application).

The January 19, 1984 extension was granted based on information obtained from the original thirty-day authorization; interceptions were continued on only six telephones where conversations relating to illicit drug activity had been intercepted under the original authorization. The truthfulness of Venezia's testimony would have made no difference to the court's granting or refusing an extension.

There being no evidence that the Government acted recklessly or deliberately misled the court nor that Venezia's information was false, and there being more than sufficient information for the court to have determined there was probable cause for interception even if the Venezia information were excised from the Reed affidavit, *Id.*, the court denied the motion based on Venezia's alleged recantation.

### 2. *Disclosure of Lavin's Income Tax Information*

■ A portion of Agent Reed's affidavit was based on information received from IRS Special Agent Stephen H. Gannon (Aff. p. 66 *et seq.*) and IRS Revenue Agent Lloyd Rogers. They advised Reed of information contained in Lavin's income tax returns and subpoenaed tax records. Lavin, contending that the IRS did not have the authorization required by law to disclose this information to FBI agents and others, requested suppression of the wiretap evidence.[6]

The Tax Reform Act of 1976, 26 U.S.C. § 6103 *et seq.*, restricted disclosure of tax returns and related information. Congress established stringent procedures to be followed before IRS information is divulged to federal officers or employees for enforcing federal tax and other laws (6103(h) and (i)). These procedures must be followed even if IRS agents participate in an investigation coordinated by the Department of Justice, *United States v. Chemical Bank*, 593 F.2d 451 (2d Cir.1979). Unauthorized disclosure of tax information has been made a felony, 26 U.S.C. § 7213.

Section 6103(b)(4) defines tax administration as relating to the execution of Internal Revenue and related statutes. When a matter involves tax administration, disclosure can be made either by the Secretary of the Treasury or his delegate on his own

---

**4.** There was also no actual "recantation" and it has not been established that Venezia's testimony before the Grand Jury was in fact false. When Venezia was returned to Philadelphia to reappear before the Grand Jury on April 16, 1984, he did not change his testimony but instead invoked his Fifth Amendment privilege and refused to answer questions, although he had been granted continuing use immunity by Judge Giles.

**5.** As noted, no government agent ever knew of Venezia's expressed desire to change his story until December 30, 1983, eleven days after the original order was signed by the court.

**6.** Federal income tax returns are privileged but this privilege may only be asserted by one who has a legitimate interest in the confidential information contained therein. Thus, only Lavin had standing to complain of an invasion of the privacy of his tax returns.

motion or upon a request in writing from the Attorney General or his authorized delegate, § 6103(h). The Government must be able to trace the path of referral meticulously. *United States v. Bacheler*, 611 F.2d 443 (3d Cir.1979).

■ Disclosure for administration of federal laws not relating to tax administration may be made only upon an order of a federal judge who finds reasonable cause to believe that: a specific criminal act has been committed, tax return information contains probative evidence of a matter relating to the criminal act, and the information sought to be disclosed cannot reasonably be obtained from any other source or is the most probative evidence of a matter in issue, § 6103(i)(1)(B). If tax information is obtained in violation of the law, the appropriate remedy is suppression of the tainted evidence. *Chemical Bank*, 593 F.2d at 458.

■ The Lavin investigation did *not* involve tax administration (§ 6103(h)) as the Government contends. The statute's definition of tax administration must be strictly construed, as "[w]e are never mindful that when Congress enacts a statute designed to limit government intrusion in the private affairs of its citizens, the statutory provisions must be followed scrupulously." *Bacheler*, 611 F.2d at 447. A Title 26 Grand Jury investigation of Lavin had been authorized and the Government believed that the source of Lavin's unreported income was drug transactions, but the instant investigation pertained to the enforcement of criminal statutes proscribing possession and distribution of controlled substances. Even if the disclosure were tax related, the Government did not proffer any evidence that the proper 6103(h) authorization was obtained. On the present state of the record, we must assume a violation of 6103(h) from the inadequacy of the Government's response to Lavin's motion. The Government conceded that the disclosure was not authorized in the manner § 6103(i)

requires for non-tax administration disclosures.

■ Because of this improper disclosure, we have set aside those portions of the affidavit that rely on unauthorized IRS information. Having done so, we have found that even without this tainted information the Government presented more than sufficient probable cause for interception. Lavin's motion to suppress for improper disclosure of tax information was accordingly denied.

3. *Probable Cause of Ashley Road Wiretap*

This court's December 19, 1983 Order authorized interception of wire communications on eight public and private telephones. Defendants contest the application and affidavits offered in support of that order for lack of probable cause with regard to the telephones subscribed to by Sandra Ulino and located at 147 Ashley Road, (215–356–6939, subsequently changed to 215–356–8297); it is undisputed that Bruce S. Taylor and Suzanne Norimatsu-Taylor resided at that address.

■ A court may issue an order authorizing interception of telephone communications only if it finds probable cause to believe that a particular telephone will be used for communications concerning criminal offenses, 18 U.S.C. § 2518(3). Only an "aggrieved person," 18 U.S.C. § 2510(11), may challenge a particular wiretap. An aggrieved person is a party to intercepted conversations or one named in the order authorizing the wiretap as a party against whom the investigation was targeted. *Id. See also United States v. Fury*, 554 F.2d 522 (2d Cir.1977), *cert. denied*, 436 U.S. 931, 98 S.Ct. 2831, 56 L.Ed.2d 776 (1978). Lavin was named in the order and he and Kim Norimatsu were both parties to conversations intercepted on this phone, so both are "aggrieved persons" with standing to challenge the interception of communications on this telephone.

A probable cause affidavit is to be examined as a whole and various portions of an affidavit may be corroborated by reference to other portions. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Agent Reed's affidavit revealed sufficient probability that the Ashley Road phone was being used for prohibited activity. Reed's belief was drawn primarily from pen registers [7] from June to December, 1983 [8] authorized by Judge VanArtsdalen of this court.

The pen registers revealed that Bruce Taylor used his home telephone to place calls to numerous pay telephones, used by members of the alleged conspiracy (as confirmed by on-site surveillance), and to the Radio Broadcasting Company, used by members of the alleged conspiracy to contact one another by beepers. The prior Ashley Road pen register also revealed over 50 calls to Michael Schade who had contacted the Taylors over 180 times in a one-month period. Schade was believed involved in the alleged conspiracy based on a cryptic call to him from the Taylors on August 13, 1983 from the residence of Wayne Heinauer in Phoenix, Arizona. A wiretap on Heinauer's phone had been authorized by an Order of Judge William Copple, U.S.D.C., Arizona; Heinauer was believed to be a purchaser of cocaine from Lavin, Taylor and other members of the conspiracy.

Reed's affidavit provided sufficient probable cause that the Taylors were committing drug offenses enumerated in 18 U.S.C. § 2516 and that particular communications concerning drug offenses would be obtained by the interception of their home telephone. Even without the Venezia testimony and the information disclosed by the IRS, as discussed *supra*, there was a sufficient legal basis for the interception order and this motion was accordingly denied.

---

7. Pen registers are, of course, consistently reliable sources of information, as opposed to human informants; yet, information from the latter may provide sufficient basis for probable cause. *See Gates v. Illinois,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

8. Prior to Judge VanArtsdalen's order of authorization, the DEA had a court ordered pen register on a pay phone at a Dairy Queen restaurant from August 26—October 22, 1982.